A09A1223, A09A1327. CLARY et al. v. CITY OF STOCKBRIDGE; and vice versa.
(686 SE2d 288)

DOYLE, Judge.

Sarah D. Clary, individually, and as executrix of the estate of J. D. Clary, the estate of J. D. Clary, and J. H. Thurman ("condemnees") appeal from a jury award for compensation in a taking of a tract of land in Henry County, arguing that the trial court erred by admitting certain evidence and by excluding other evidence. The City of Stockbridge cross-appeals, alleging that the trial court erred by failing to award attorney fees under former OCGA § 22-2-84.1. We consolidate these appeals, and, for the reasons set forth below, we affirm in Case No. A09A1223 and reverse and remand in Case No. A09A1327.

The condemnees own a 1.24-acre tract of land in Stockbridge near the intersection of East Atlanta Road and Highway 42 ("the subject property"). The area surrounding the subject property was occupied by a library, a florist shop, church buildings, and a ball field owned by the church. The subject property was occupied by a restaurant (the Huddle House) and a structure known as the Maytag

---

Building. In or around November 2003, the condemnees entered into an agreement with United Retail Development Company, LLC ("United Retail"), a company acting as an agent for Eckerd Drugstores, to sell a portion of the subject property; however, the purchase did not go through because, as permitted by the agreement, United Retail determined that the site was not suitable for an Eckerd Drugstore.

The City decided to construct a new city hall, and in August 2005, the City filed its petition to condemn the subject property pursuant to OCGA § 22-2-100 et seq. Following a hearing, the Special Master entered an award in the amount of $609,000, and the condemnees appealed the award to the superior court.[1]

Prior to trial, the parties filed motions in limine seeking to exclude certain evidence and testimony at trial. Following a hearing, the trial court granted the City's motion in limine to exclude evidence regarding the condemnees' agreement with United Retail, concluding that the agreement was not admissible as direct evidence of value; the trial court also excluded the testimony of the condemnees regarding value that was based on the language of the agreement. The trial court denied the condemnees' motion in limine to exclude evidence regarding waste material removed from the subject property, including the cost to the City to remove the material.

At the conclusion of the trial, the jury returned a $452,000 verdict, and the trial court entered judgment in that amount. Thereafter, the City moved for attorney fees and expenses of litigation pursuant to former OCGA § 22-2-84.1, and the trial court denied the motion. The condemnees appeal the verdict and judgment in Case No. A09A1223, and the City appeals the denial of its motion for attorney fees in Case No. A09A1327.

### Case No. A09A1223

1. The condemnees argue that the trial court erred by admitting evidence and testimony regarding the quantity and cost of removing waste material from the subject property because it was irrelevant to the issue of just and adequate compensation. We disagree.

The condemnees rely on *Barnwell v. State Highway Dept.*,[2] for their position that the costs associated with removing the waste from the subject property are immaterial in determining the value of the property at the time of the taking. But *Barnwell* held only that costs

---

[1] As of the date of the taking, the Huddle House was closed to customers, and the Maytag Building held a month-to-month lease.

[2] 108 Ga. App. 335 (132 SE2d 842) (1963).

associated with excavation or filling in condemned property are irrelevant in that the value of a condemned property is determined on the basis of its market value for any purpose, rather than the use for which the condemnor acquired the property.[3]

> Fair market value is the price a seller who desires, but is not required, to sell and a buyer who desires, but is not required, to buy, would agree is a fair price, *after due consideration of all the elements reasonably affecting value.* Any evidence is relevant which logically tends to prove or disprove a material fact which is at issue in a case, and every act or circumstance serving to elucidate or throw light upon that material issue is relevant and admissible.[4]

"[The] admissibility of evidence is a matter which rests largely within the sound discretion of the trial court."[5]

Here, the City designated Jim Vann as its expert, who was also the contractor for the municipal building project on the subject property. Vann testified that when he began the grading on the subject property as part of construction, he discovered the following materials buried on the property: concrete, asphalt, plastic, tires, car parts, carpet, timbers, tree branches, metal pieces, and other construction debris.[6] According to Vann, because the debris — enough to fill 1,500 dump trucks — was not properly compacted, it had to be removed before constructing anything, including a structure or a parking lot; specifically, Vann testified that it would be unlawful to build on the improperly compacted areas without first removing the debris.

Under these facts,

> [w]e conclude, as the trial court did, that the general environmental condition of the condemned property, [including the existence of the waste items that had to be removed], was a relevant factor in fairly assessing the market value of the property, not simply as to the condemnor, but as to all prospective buyers.[7]

---

[3] See id. at 338 (1).

[4] (Citation and punctuation omitted; emphasis in original.) *Stafford v. Bryan County Bd. of Ed.*, 219 Ga. App. 750, 752 (3) (466 SE2d 637) (1995), rev'd on other grounds, *Stafford v. Bryan County Bd. of Ed.*, 267 Ga. 274 (476 SE2d 727) (1996).

[5] (Punctuation omitted.) *Dept. of Transp. v. Ogburn Hardware &c.*, 273 Ga. App. 124, 127 (2) (614 SE2d 108) (2005).

[6] The approximately 17,640 cubic yards of debris, which covered approximately 70 percent of the subject property, was not discovered until after the excavation began on the subject property.

[7] *Stafford*, 219 Ga. App. at 752 (3). Cf. *Shealy v. Unified Govt. of Athens-Clarke County,*

Thus, the trial court did not abuse its discretion in allowing evidence associated with the removal of the debris from the subject property.

2. The condemnees also allege that the trial court erred in determining that their agreement with United Retail was an option contract and therefore inadmissible as direct evidence of value. Again, we disagree.

The contract entered into between the condemnees and United Retail, entitled "Agreement to Buy and Sell Real Estate," provided that United Retail would purchase a portion of the subject property for, subject to multiple terms and conditions, $531,915. First, United Retail had an inspection period "to analyze and inspect the [p]roperty to determine its suitability for [United Retail's] intended use as a retail store"; if United Retail determined, "in its sole discretion," that the property was not suitable for such use, it could terminate the agreement with timely proper written notice, in which case the condemnees would refund the earnest money paid. If United Retail wished to proceed with the purchase, it was required to provide notice to the condemnees and to tender additional earnest money, which would "create a binding contract for the sale and purchase of the [p]roperty on the terms and conditions set forth [in the agreement]." The agreement also conditioned the purchase of the property on United Retail's purchase of adjacent property.

> A purchase agreement which does not close may be admissible as evidence of value, but only if the agreement is not too speculative; the likelihood of consummating the deal must be reasonable enough to permit the conclusion that the purchaser has actually obligated himself to purchase the property at the named price.[8]

Although not all contingencies will render a purchase agreement too speculative for admission in a subsequent condemnation proceeding, "the contingenc[ies] in this agreement effectively eliminate[ ] any risk or commitment on the part of [United Retail]."[9] United Retail was only obligated to purchase the property if it determined that it was suitable for use as a retail store and if it successfully closed on the purchase of adjacent property. Under these facts, "the illusory nature of [United Retail's] obligation under this agreement makes

244 Ga. App. 853, 855 (537 SE2d 105) (2000) ("the 'general environmental condition of the condemned property,' including the need for remediation, is a relevant factor" in determining the fair market value of the property).

[8] *Mauldin v. Housing Auth. of the City of Marietta*, 223 Ga. App. 158, 159 (1) (a) (477 SE2d 317) (1996).

[9] Id.

the probative value of the stated purchase price marginal at best."[10] Thus, the trial court did not abuse its discretion in excluding the United Retail contract as direct evidence of value.

3. In their third enumeration of error, the condemnees assert that "[t]he trial court erred . . . in directing that [they] would not be allowed to give testimony as to an opinion of value of the subject property if the sole basis for such opinion was the excluded [United Retail agreement]." This enumeration affords the condemnees no basis for reversal.

In *Mauldin*,[11] we held that "[a]n unaccepted offer to buy, sell, or lease property is not admissible as direct evidence of the property's value, though testimony referring to the unaccepted offer as a basis for an opinion as to value is admissible," citing to *Merritt v. Dept. of Transp.*[12] Our opinion in *Merritt* states that "[a]lthough unaccepted offers to purchase do not in and of themselves constitute evidence of market value, the general rule is that they are admissible *where offered as partial basis for opinion testimony as to value.*"[13]

Here, the trial court ruled that "to the extent that [the condemnees'] lay opinion[s] [are] based solely on the number of this [option agreement with United Retail], then the entire testimony of [those witnesses] would be excluded." Thus, even assuming that the holdings in *Merritt* and *Mauldin* regarding the admissibility of unaccepted offers apply to the United Retail agreement — not an unaccepted offer, but rather a signed agreement for the purchase of property based on multiple contingencies and stipulations, which never closed — the trial court's ruling did not conflict with those holdings.

We also note that after it made its initial ruling as to the condemnees' testimony based on the United Retail agreement, the trial court considered the deposition testimony of the condemnees, and then concluded that the testimony regarding value lacked proper foundational requirements other than those based on the agreement. The condemnees neither challenge this ruling on appeal, nor do they provide any record citations to show that the trial court's determination regarding lack of foundation was erroneous. Thus, even if the condemnees had enumerated as error the trial court's exclusion of their testimony as to value because they were based on both the

---

[10] Id.

[11] See id.

[12] 147 Ga. App. 316 (248 SE2d 689) (1978), rev'd on other grounds, *Dept. of Transp. v. Merritt*, 243 Ga. 52 (252 SE2d 508) (1979).

[13] (Emphasis supplied.) Id. at 318 (2).

United Retail agreement and other proper bases, such an argument would fail.[14]

### Case No. A09A1327

4. The City argues that the trial court erred by failing to award mandatory attorney fees and costs as required by former OCGA § 22-2-84.1 (a), which provided, in relevant part, that

[i]f the condemnee appeals to the superior court from the assessors' award, the condemnee shall be liable for reasonable expenses incurred by the condemnor in determining just and adequate compensation in the superior court unless the judgment in such court is for an amount of compensation which is greater than the assessors' award by at least 20 percent.[15]

The statute provided that, under the Code section, "reasonable expenses include, without being limited to, attorneys' fees. The amount of such expenses shall be decided by the judge in the condemnation proceeding and shall be a separate entry upon the award or final judgment."[16]

Here, the special master determined that the actual market value of the subject property was $609,000. The judgment entered thereafter by the superior court was for $452,000. Thus, under the plain language of former OCGA § 22-2-84.1 (a), the condemnees are responsible for the City's reasonable expenses incurred during the appeal to the superior court. However, the trial court denied the City's motion without explanation.

On appeal, the condemnees argue that the trial court properly denied the City's motion for attorney fees because (a) OCGA § 22-2-84.1 had been repealed; (b) the City's motion for attorney fees was untimely; (c) the Code section did not apply to appeals from awards of special masters; and (d) the City could not recover for attorney fees related to nonvalue issues of law. We find these arguments unavailing.

(a) OCGA § 22-2-84.1 was repealed by Ga. L. 2006, p. 39, § 6, effective April 4, 2006, which states that the repeal "shall only apply to petitions for condemnation filed on or after" the effective date of April 4, 2006.[17] In this case, the City filed its petition for condemnation on August 31, 2005. Thus, the mandatory reasonable expenses

---

[14] See id.

[15] OCGA § 22-2-84.1 was repealed by Ga. L. 2006, p. 39, § 6, effective April 4, 2006.

[16] Former OCGA § 22-2-84.1 (b).

[17] Ga. L. 2006, p. 39, § 25.

requirement set forth in former OCGA § 22-2-84.1 is applicable to this case.

(b) The City's motion for attorney fees was timely. The jury returned a verdict in this case on June 13, 2008, and the trial court entered the judgment on June 26, 2008. The City filed its motion for attorney fees on July 30, 2008.

(i) Former OCGA § 22-2-84.1 did not contain a deadline for a party to request fees under that Code section, nor did it even require a separate request for fees. Instead, the statutory language was mandatory, requiring that the condemnee *shall* be liable for reasonable fees incurred by the condemnor. Given the timing of the City's motion and the absence of a deadline in former OCGA § 22-2-84.1, we find unpersuasive the condemnees' argument that the motion was not timely filed.[18]

(ii) We also reject the condemnees' contention that the filing of their notice of appeal terminated the jurisdiction of the trial court. " '[W]hile a trial court is without jurisdiction to modify or enforce a judgment during the period of supersedeas, it has jurisdiction to consider other matters in the case,' including a motion for attorney fees." [19]

(iii) Also without merit is the condemnees' argument that the trial court was without jurisdiction to consider the City's motion for attorney fees because it was not filed within the same term of court.[20] Former OCGA § 22-2-84.1 (b) specifically provided that the amount of the expenses "shall be a separate entry upon the award or final judgment." Thus, an order for attorney fees and expenses under this Code section is not a correction or modification of the judgment setting the amount of compensation for the taking, but is a separate order required by statute.

(iv) The condemnees further argue that the City was required to raise the issue of attorney fees/cost of litigation prior to the entry of the compensation award. But there is no such requirement set forth in former OCGA § 22-2-84.1. The condemnees' assertion that the language in former OCGA § 22-2-84.1 (b) providing that "[t]he amount of such expenses shall be decided by the judge in the

---

[18] We find the 45-day deadline for filing a motion for attorney fees under OCGA § 9-15-14 persuasive, though clearly not binding here.

[19] *Horesh v. DeKinder*, 295 Ga. App. 826, 828 (1), n. 1 (673 SE2d 311) (2009), quoting *Fairburn Banking Co. v. Gafford*, 263 Ga. 792, 794 (439 SE2d 482) (1994).

[20] See *Tanaka v. Pecqueur*, 268 Ga. App. 380, 381-382 (1) (601 SE2d 830) (2004) (" '[a]lthough a trial judge has inherent power during the same term of court in which the judgment was rendered to revise, correct, revoke, modify or vacate such judgment, even upon his own motion, for the purpose of promoting justice and in the exercise of a sound legal discretion, this authority does not extend beyond the same term of court, unless a motion to modify or vacate, et cetera, was filed within the same term of court' ").

condemnation proceeding," requires that the issue be decided during the condemnation proceeding is baseless. The plain language of the statute clearly indicates that it should be the same judge for both issues, as opposed to setting forth a requirement that the judge set the amount *during* the condemnation proceeding. In fact, the condemnees' characterization of the code section is nonsensical, given that whether or not attorney fees and expenses are required by the statute is dependent upon the amount of the award in the superior court compared to the prior award.

(c) The condemnees contend that former OCGA § 22-2-84.1 applied only to assessors' awards, and therefore is inapplicable to this case, where the City elected to use the special master procedure under OCGA § 22-2-100 et seq. The language of former OCGA § 22-2-84.1 (a) does refer to appeals to the superior court from an "assessors' award." The former version of OCGA § 22-2-112, however, specifically provided that "[t]he provisions of Code Section 22-2-84.1, relating to reasonable expenses incurred on appeal, shall apply to any appeal [from an award of a special master]."[21] Thus, former OCGA § 22-2-84.1 is clearly applicable to this case.

(d) Finally, the condemnees argue that the City sought to recover certain expenses and attorney fees (for example, time spent arguing evidentiary issues) that were not permitted by former OCGA § 22-2-84.1 (d), which provided that "neither the condemnor nor the condemnee shall be required to pay the other party's costs and attorneys' fees related to the litigation and appeal of issues of law including, but not limited to, issues of compensability." Here, the only issue before the jury was the amount of just and proper compensation, and any costs associated with the jury's determination of that amount, including legal issues related thereto, would be recoverable under former OCGA § 22-2-84.1 (as opposed to issues regarding whether a taking was compensable, for example).

In any case, the trial court denied the City's motion for attorney fees altogether, despite the Code section's mandatory language. Thus, we reverse the trial court's order denying the motion and remand for consideration of the motion under former OCGA § 22-2-84.1.

*Judgment affirmed in Case No. A09A1223. Judgment reversed and case remanded in Case No. A09A1327. Blackburn, P. J., and Adams, J., concur.*

DECIDED OCTOBER 27, 2009.

---

[21] See also *Martin v. Henry County Water & Sewerage Auth.*, 279 Ga. 197, 198 (1) (610 SE2d 509) (2005) (applying former OCGA § 22-2-84.1 to an award from a special master).

*Power & Cooper, Warren R. Power, Alex R. Roberson*, for appellants.

*Smith, Welch & Brittain, A. J. Welch, Jr., Lindsay M. Hodgson, William A. White*, for appellee.